Mr. Wadeghazi. Morning, Your Honors. The primary issue on appeal today is whether the assertion of personal jurisdiction against the defendants is reasonable or whether this case presents a rare and compelling situation where we're going to find that it doesn't meet with the standards of fair play and substantial justice. Can I ask kind of two questions that are on my mind? One is, are you going to say that appearance at a trade show is enough for personal jurisdiction? That's kind of a fact question. And the other one is kind of a why are we just go sue in Michigan or Tennessee and avoid this battle over a forum? So please address both of those. I will address the second one first. We certainly could go to Tennessee or Michigan. It's important to my client, however, because it is a gaming company based in Las Vegas. This is kind of the heart of the gaming world in the United States and it would like to be able to bring these actions in its home state of Nevada. And that's the primary reason we're here today. As far as whether jurisdiction is enough, attending a trade show is enough, it really depends on what's going on at the trade show. Now, what... Well, do you have any invoices or sales receipts or customer requests that came out of this trade show? We do not and the reason is we were not allowed jurisdictional discovery to obtain that. But those kinds of things could be obtained in a pre-filing investigation, could they not? I don't really see how. I suppose they could, but I mean maybe if we sent a spy to the other company, I think it would be really... You could hire an investigator, you could contact customers, you're obviously in the business so you know who the players are and you know the kinds of people that attend these sorts of shows. Those are true. What else do you have besides just we saw them at a trade show? Well, let me just... Same question my colleague asked. Let me just kind of put this in the perspective as the way the appellant sees it. You know, this really comes down to foreseeability. Was the company there? Can it reasonably expect to be hauled into court in Nevada? So let's look at what they did. Both companies came to Nevada. They brought their officers to Nevada to the largest gaming show in the United States where plaintiffs' licensees are, where they brought infringing products into Nevada or arranged to have infringing products with them at the show. They set up and used the infringing products. They promoted the infringing products. They met with customers and potential customers in order to sell and promote these infringing products. Did they have customers? A customer suggests that there's some kind of a business relationship going on and the record doesn't show any of that. Well, what the record does show is from a similar situated company, Kohl Industries, which is a competitor of the defendants. What is in the affidavit of Joseph Kohl, he states that 60% of his customers are at this show. That's how important this show is. He's meeting with customers. They're discussing. They're discussing deals. What relevance is that as to the defendant's is that there is the, that this is a similarly situated company. I think that's justification enough for jurisdictional discovery to find out who they met with, whether after the show they met, they sold devices to people they met with at the show, and essentially what activities went on during the show. This isn't a case where they came to a show, for example, as, you know, selling a different product, you know, something unrelated to the case. This is a case where they brought the allegedly infringing products. They were promoting the products at the show. Even the medical solutions case, which is relied on heavily by the defendants, even in that case, in dicta, it states clearly that a demonstration of a product, along with the solicitation of purchase orders, could be considered enough selling activity to actually find an offer for sale under the statute. Is there anything in the record other than the declaration of Mr. Kohl to support your side of this case? Which is pretty speculative, by the way. It is speculative, but that's what you have to... Is there anything else before you get into explaining? Is there anything else other than that declaration that you're relying on? Yes. There's the declaration of both defendants. There's the one declaration of the spec gentleman. I don't recall exactly what it was, but it's in the record at A298, paragraph 21, where they specifically admit that the gaming machines that they brought with them to the show belonged to Video Gaming Technologies, which is the other defendant in this case. I think that goes right to specific jurisdiction. Here they had the specific gaming machines we're talking about in this case at the gaming show. Were they turned on? Did they work? Did they sell anybody? Did they have a price list? They were turned on. We have a photograph of the machines at the show turned on. We have, again, it's the testimony of Joseph Kohl that what he saw. Now, no, we did not have an investigator go to the booth. I think that's what you're proposing. We probably should have done that. Well, you say you have the testimony of Mr. Kohl of what he saw. What paragraph are you talking about? I'm talking about, I believe it's paragraph 21. It says in that paragraph, I am aware that Spec International, etc., etc., have used and marketed what appear to be fully infringing gaming machines at the G2E show. I'm not sure what that means, I am aware. He doesn't say I personally observed or I saw. He brought paragraph 11. It discusses how the officers and sales people were brought into Nevada. Paragraph 8. These are kind of small points, aren't they? They are small points, but I think what you have to look at is the biggest picture. Would we benefit from additional evidence in the record? Absolutely, and I think that's why perhaps jurisdictional discovery... Why didn't you even appeal the other case? The other case involved... It kind of undermines my sense that you're confident in your position. The other case involved Nova Gaming, which is different gaming machines, and it was a much smaller number of gaming machines. In fact, I believe now Nova Gaming is out of business, and so that was the reason it wasn't worth it for my client to appeal that particular case. The Cadillac Jack? Cadillac Jack, my client is currently negotiating with them, and so we're hoping to avoid further litigation with them. So what the defendants would like you to adopt as the standard for personal jurisdiction is that you need to show an importation, an offer to sell, a sale, or use within the meaning of 35 U.S.C. 271A, and I don't believe that this court should adopt that standard. I mean, what we're talking about is international tissue. We're talking about minimum contacts. We're talking about whether there's enough foreseeability that you can be brought into court, and when you show up in a patentee's home state at a large gaming show... Why isn't this appropriately dealt with as the district court did, with just a reasonable minimum contacts skepticism? It doesn't really look like there's enough going on in Nevada. That's what the district court says. Why isn't that just correct? That's not what the district court said. The district court said that we probably do have enough for specific jurisdiction, but the district court found that the exercise of jurisdiction under the third prong would be unreasonable. Because there's really not enough going on. There's minimal contacts with Nevada. Right, and I don't think that should be the standard for such a rare and compelling case. Ruling that that's what's needed, that the defendants would... Excuse me. Ruling in favor of the defendants would mean that fair play and substantial justice, that third prong, requires that defendants only be sued in their home state, because it ignores the plaintiff's home state. It ignores where the plaintiff filed. It ignores where the plaintiff's witnesses are. No, you can get them any place they're really doing business and really stirring up some impact, but appearance at a trade show doesn't really rise to that level, does it? Again, I agree. Just an appearance at a trade show, but a lot more was going on. They brought the infringing products there. They were promoting and selling them. Excuse me, not selling them, but at least meeting with customers, negotiating. After the show, hey, we'll get some sales orders going, discussing possibly... Is there anything in the record that substantiates those last comments? The only thing in the record, again, is the testimony of Joseph Cole. I agree it's not there, and that's why I think we probably need some jurisdictional discovery to determine what was going on at the show. You want to save the rest of your rebuttal, Mr. Orgazy? Thank you. Mr. Underwood, will you be first? Yes, sir. Good morning, Your Honors. May it please the Court. I'm Stephen Underwood, and I represent the appellee spec. I'm here with my colleague, Jim Boyle, who is representing the appellee BGT. Why isn't he right that he probably deserves at least a chance to look around a bit? If you appear there at a trade show, shouldn't he get discovery? Well, if you look at the record, Your Honor, the amount of discovery, or the type of discovery, the nature of the discovery that the plaintiff... Just jurisdictional discovery. You can just look and see if there were any sales made and how much, and were there these customer meetings that he has to guess about now. But if he could substantiate them, it may give him personal jurisdiction. Well, the record does contain that information, Your Honor. We have the declaration from Mr. at the show. He proffered that information. We also went through and presented... You didn't offer. Did you have any customer inquiries, anybody seeking to buy, that maybe you didn't consummate the sales at that moment? But I'm still wondering why discovery isn't an appropriate way to deal with this. Well, I think that if you look at the record, Your Honor, it does say that there were no sales or offer for sales. And counsel is quite right. But isn't there some reason to believe that your client was there for some reason? Absolutely. And Medical Solutions actually acknowledges that point, that clearly that we were there for a commercial purpose. There's no other reason to be at a trade show. The question is, is being at a trade show alone sufficient? And in Medical Solutions, it expressly stated that much more would be needed than what was shown in that case. In the Synthesis case, the district court gave discovery, and indeed they found more evidence. Why wouldn't we perhaps reach the same result here? Because the evidence we've already gotten is that there was no sale or offer for sale. I can't see how any additional discovery would resolve that in a different manner. And in that case, it was dealing with a statute that was somewhat different than the long arm statute here. And didn't that present a different issue? The opinion states that it did, sir. However, it's our position that, A, that's dicta, because in that case, there was already a finding that the defendant had imported the allegedly infringing product into the United States, which is in itself an act of infringement under 271A, that it was a case under Rule 4K2, not 4K1, as is this case. And moreover, as we presented in our brief, with all respect, we failed to distinguish a substantive difference in result between articulating the standard as to whether or not the tortuous act causes injury in D.C. under the D.C. long arm statute, versus whether or not it arises out of or is related to the underlying cause of action, which is, as we're required to follow, the second prong of the merits and actions analysis. Let me ask you the same question I asked him on the other side. Why are you so afraid of Nevada as a forum? Why not just resolve this issue on the merits instead of bouncing up and down on appeal on these procedural matters? Your Honor, we tried to do exactly that. We filed a declaratory judgment action in Michigan to resolve the matter. Michigan, we're a smaller company. We would like to... Okay. It was transferred back to Nevada. Correct. So now you may end up in some other forum, but why not just reach the merits? What fear do you have of Nevada as a forum? We have no fear of Nevada as a forum, and we have no fear of reaching the merits. As we said, we filed a declaratory judgment action on the point because of our confidence in our case. However, our client is entitled as a citizen of the United States to, a fictitious citizen the corporation may be, but still nevertheless is entitled to be hauled into a court where it is subject to personal jurisdiction. It does not want to go to Nevada. It does not want to go into the backyard, the home court of the plaintiff. If there's going to be a jury drawn, we want that jury drawn from an area in which our peers might reside, and we believe that we're entitled to have that case proceed in Michigan. And that's what the due process requirement of the Constitution obligates the court to do. I also would like to address the issue of preclusions, Your Honor. We think that Judge Pro had before him an exactly identically situated case. The matter was fully developed before him. A complaint was filed, a motion to dismiss was filed by SPEC, and in that case, NOVA, and in this case, SPEC and BGT. They are identical virtually word for word as our papers, I think, clearly demonstrate. PRPG filed an opposition paper that was exactly identical to that which was in this case. Judge Pro went ahead, held a hearing, at which time PRPG had a full and fair opportunity to present its arguments. And then Judge Pro elected to issue a ruling that denied personal jurisdiction and dismissed the case. For whatever reason, and I've heard for the first time today, AA justification, but for whatever reason PRPG declined to appeal that case. It is a final judgment. PRPG lost. They had a full and fair opportunity to participate and to be heard, and they were there. Under any analysis of issue preclusion, we contend, with all respect, that Judge Pro's decision should be given preclusive effect and should have prevented Judge Mahan from ruling, from even getting to the issue of personal jurisdiction. Did this make any difference? The fact that the products may be different in those two cases? Not at all. That was not a point that Judge Pro was concerned about, whether or not, under the medical solutions case, that the plaintiff had established sufficiently that there was a presence in Nevada. And he ruled that they had not. It was the same booth, it was the same actors involved there, NOVA versus VGT. There's nothing in the record that would suggest that they're differently situated at all. Your client is the same in both cases, obviously, but your client is different companies in the two cases, presumably with different products, that arguably might present different infringement questions. They arguably may, Your Honor, but we don't believe that that influences or impacts the determination of whether or not there's personal jurisdiction over either SPEC, NOVA in the first case, or SPEC or VGT in this case. And I will concede the remainder of my time to Mr. Boyle. Thank you, Your Honor. Thank you, Mr. Underwood. Mr. Boyle? Good morning, Your Honor. May it please the Court. I'm James Boyle, and I represent Pele Video Gaming Technologies, Inc. Why no discovery here? Well, I think Mr. Underwood answered that question fairly well, but I will say this, Your Honor. I think that PRPG has an obligation to come before this Court with some indication of what jurisdictional discovery is going to find, and I think those questions... Well, they were in about the same place as the Scythus case. There was a trade show, and when the discovery was granted, they were able to show more in that instance. Why not here? Correct. Well, I think in that case, the real distinguishing factor is that the plaintiff in Scythus came to the Court with a lot more preliminary evidence than what is before the Court here. In Scythus, they came forward and said there have been trade show appearances, but there have been Internet contacts with the forum. There have been 17, I think there were 17 or 18 accounts actually in the forum. The sales representative was visiting the forum on a pretty regular basis as a part of her ongoing sales efforts, and so there was some material that had been brought to the Court to say, although the record is not fully developed, we need to do more, but we'll allow the plaintiff to go in and sort of flush those facts out. In this particular case, there's virtually nothing. I think when you look at the declaration of Jay Sevigny from VGT, or you look at the declaration of Orlando Stevenson from SPAC, both defendants are sworn under oath that they have virtually no contacts with the forum in Nevada, other than attendance at these annual trade shows, whether it's Bingo World or G2E. You are a gaming company, right? We sell gaming machines, that's correct. And you have no contacts with Nevada? That's correct. We do not sell, VGT does not sell its gaming machines to any gaming companies that operate in the state of Nevada. And so while the annual gaming show, G2E in particular, is held in Las Vegas every year, and there are many, many companies that come to that particular event, there's no evidence that's ever been developed out of VGT's attendance at that show that indicates it has any forum-related activities. If I were a gaming company, I think the thing I would want to do most of all would be to have some incursion into the largest gaming market in the world, Las Vegas. And so I would go to a trade show there in the hope of doing that. Why isn't Mr. Borghese right that that's what's going on here? And why don't we give him discovery and let him find out if that's what's going on here? Well, I think the question of what Mr. Borghese may be looking into has already been answered by the declarations of Mr. Savigna and Mr. Stevenson, and that is there are no sales activities. There are no offers for sales. You have no interest in having anything to do with Nevada, the biggest gaming capital in the world, and you're a gaming industry. And I can't, well... There's a disconnect there. Either you don't want to do any business or you want to have a good legal position. I would think the business is more important. Well, and I don't want to speculate as to what the business strategies are of EGT because I'm really not privy to that information, but I will say this. I've had some conversations with my client on this issue, at least at a superficial level. My understanding of the gaming industry is that market penetration to the large casinos in Nevada is a very, very complicated and difficult undertaking. It's dominated by the major players in the Valleys and IGT and companies of that ilk, which do have a fairly substantial presence in Nevada, not only on the sales level, but on the manufacturing level. Companies like BGT or Cadillac Jack or Nova, very small bit players, marketing to casinos and gaming companies that are Native American casinos, for example, or riverboat gaming facilities. Things like that are located in other forums. But the reason you go to Las Vegas is to avail yourself of that market, to maybe someday become one of those big players, right? I wouldn't go so far as to say we're availing ourselves of that market. The annual trade show for that particular... Does that just show up? Well, I think we set up... I don't think... We set up a booth, obviously, and we have materials that are there in regard to what the company does. But we're not consummating sales in that forum. We're not offering to consummate sales in that forum. We're certainly not using devices in that forum, and we're certainly not manufacturing or making use of devices in that forum. And so while Mr. Borghese may want to sort of, through osmosis, impute what is happening for coal industries to BGT or to SPAC, that's simply not enough. It's totally speculative. But, you know, you're saying that you're not making any sales there. But isn't Mr. Borghese entitled to at least ask why you're there and what it is that you're trying to accomplish there as to perhaps you want to develop sales or you're attempting to make contacts with persons or businesses in Las Vegas or not? These are all relevant questions, are they not? I don't know that they're entirely relevant to the claim of patent infringement that has been made in this case. I mean, they may be relevant to some other particular issue or When you look at the allegation of patent infringement, are cabinets that BGT is using outside the Forum of Nevada infringing the patents at issue? That's the question for jurisdictional analysis. It doesn't have anything to do with some of these breach of contract or interference with contractual relationship. Those have no bearing on this case at all. And so whatever discovery he may be seeking in regard to the patent claims has already been answered by the declarations of Mr. Sivigny and the declaration of Mr. Stephenson. There is no other information that he's going to find. And frankly, I think, Your Honor, you did raise the issue in your questioning of Mr. Borghese, and that is didn't he have an opportunity to do some pre-filing analysis of his claim before he filed it? And the answer is absolutely. If his client was at the trade show and saw what he believes was an infringing activity, he had plenty of opportunities to gather additional information. And he either chose not to do so or what he gathered doesn't support his claim. I would argue that it's more likely the latter because there is no evidence that he has been able to present to this court or to the district court on the record that demonstrates that there was any type of activity ongoing in Nevada that would constitute a patent infringement. The only other issue I'll address very briefly, Your Honor, was on the reasonableness factors. And I think the issue that was brought up by PRPG was that Judge Mahan misapplied Ninth Circuit law to the particular issue of reasonableness. We think that's harmless error because when you look at the Federal Circuit's test, it's really analogous to what was raised in Worldwide Volkswagen. It's very similar to the Ninth Circuit test. The fact that the Ninth Circuit has two additional factors is really not relevant. Thank you, Your Honor. Thank you, Mr. Boyle. Mr. Borghese, you have four minutes left. Thank you, Your Honors. First, I'd like to just briefly address the argument that while they're not currently selling anything in Nevada right now, I think if you look at the Synthesis case, that's instructive on that. In that particular case, the company was not selling into the United States. They had up signs that said, you know, not available, not regulated by the FDA, and that was immaterial in that. And what the court noted in that case was that, well, there's people from the United States there, just like there's people and companies from Nevada at this Nevada trade show. Finally, I would like to go back to the very first question I think you asked, or maybe it was the second, and that is, is being at a trade show enough? And I really think it is. Let's take a look at what the next case down the line might be. And the next case down the line might be someone going in for a temporary restraining order or a preliminary injunction. But isn't the key here that you could easily have gotten more than just a trade show as your evidence? If you could have come up with one or two customers or one or two anythings that suggest commercial activity, this would be a different case, wouldn't it? I agree. It would be a much easier case for my client. But what I'm thinking about is the next case where we don't know someone's going to show up at the trade show, and they do, and there they are, and we believe these are infringing machines, and we have photographs of them, and we have them there. They say they don't do business in Nevada. We go to the Nevada District Court, we say, hey, we need a temporary restraining order or a preliminary injunction. And the opposition comes in, there's no jurisdiction because the Federal Circuit says you cannot have jurisdiction just by appearing at a trade show. And I think that really creates some problems. The infringing machines are there, but they're not made there, they're not used there, they're not sold there, they're not offered for sale there. Where's our nexus to a infringement case? I think the nexus is that they are there, and you're right, they probably do have to have more, not just that they're showing, hey, look at these great machines that we have, but that they are meeting with customers, that they are trying to promote these machines, that they are trying to sell them. And I think you do need that as well. But I think that we have that in this case, and if the record's not fully developed, I think we can get that in jurisdictional discovery. Thank you. Thank you, Mr. Borghese. That concludes our morning.